UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SANTOS ARROYO,

                              Plaintiff,

                 vs.                                      9:08-CV-61
                                                                     (J. Scullin)

DR. GEORGE STURTZ,

                              Defendant.
_____

SANTOS ARROYO, Plaintiff *Pro Se*
ROGER W. KINSEY, Assistant Attorney General for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint[1], plaintiff, a former inmate, alleges that he has been denied proper and adequate medical care in violation of his constitutional rights. Plaintiff seeks substantial monetary relief.

Presently before the court is a motion for summary judgment on behalf of Dr. Sturtz, pursuant to FED. R. CIV. P. 56. (Dkt. No. 25). Plaintiff has not responded to the motion. This court recommends that defendant's motion for summary judgment

---

[1] In this recommendation, the court will discuss plaintiff's only remaining claim. Senior Judge Scullin dismissed any claims against Superintendent Taylor and C.O. Denny because the Complaint did not set forth facts showing personal involvement by Superintendent Taylor, and did not allege an actionable claim under § 1983 against Correction Officer ("C.O.") Denny. (Dkt. No. 4 at 3-4).

be granted, and the case be dismissed as to the remaining defendant, Dr. Robert Sturtz.

## DISCUSSION

**1.     <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the "'the pleadings, depositions, answers to interrogatories, and admissions on the file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those

portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**2.    Facts**

Plaintiff's claims arise out of an incident that occurred on July 12, 2005, while plaintiff was incarcerated at Gouverneur Correctional Facility in Gouverneur, New York. (Dkt. No. 1 ("Compl.") at 5). On that day, plaintiff was assigned to work on a sanitation truck operated by C.O. Denny. *Id*. Plaintiff states that while he was standing on the back of the truck holding down some materials to prevent them from blowing away, C.O. Denny started the truck up suddenly and without notice to plaintiff. *Id*. Plaintiff fell off the truck and was knocked unconscious. *Id*. Defendant Sturtz states that the accident occurred around 10:20 a.m., and that the fall caused injury to plaintiff's head and back. (Dkt. No. 25, Sturtz Affidavit at ¶ 5, Ex.

A).

Unfortunately, plaintiff's Complaint does not specifically state how Dr. Sturtz provided constitutionally inadequate medical care. The court must construe *pro se* plaintiffs' claims liberally, and therefore, the court will discuss the medical care rendered by Dr. Sturtz. Plaintiff was taken to EJ Noble Hospital the same day as the accident. (Dkt. No. 25, Sturtz Affidavit at ¶ 5). Staff at the hospital performed an EKG, CT scans of plaintiff's head and spine, and x-rays, and all of the tests were negative. (Dkt. No. 25, Sturtz Affidavit at ¶¶ 6-8). The hospital record shows that hospital staff sutured three stitches in "two parallel vertical scalp lacerations one inch apart occipital area each ~ 3 cm in length." (Dkt. No. 25, Sturtz Affidavit, Ex. C). The hospital doctor diagnosed "head injury - minor" and found no evidence of a depressed skull fracture. *Id*. Plaintiff was "stable" on discharge. *Id*. Plaintiff was returned to Gouverneur around 4 p.m., and spent the night in the facility infirmary under observation. (Dkt. No. 25, Sturtz Affidavit, Ex. A).

While at the infirmary, plaintiff's vital signs were recorded nine times between 4:30 p.m. on July 12 and 7:20 a.m. on July 13, 2005. (Dkt. No. 25, Sturtz Affidavit, Ex. D). Plaintiff denied experiencing vertigo, blurred vision, nausea, and dizziness. *Id*. At all times, plaintiff's speech was clear, and he was able to move his extremities "with purpose." *Id*. At 7:20 a.m. on July 13, 2005, plaintiff stated that he "feels good". *Id*. Later that day, defendant Dr. Sturtz wrote "alert - active- ambulatory. Speaks well." *Id*. Dr. Sturtz placed plaintiff in the infirmary on July 12, and

authorized plaintiff's release back to general population on July 13, 2005. *Id*.

Although not the result of an examination, defendant Dr. Sturtz's next contact with plaintiff's medical file was on September 1, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 19 and Ex. I). Dr. Louise Dallaire, a private radiologist took an x-ray of plaintiff's lumbar spine on August 26, 2005. (Dkt. No. 25, Sturtz Affidavit, Ex. I). The results of the x-ray were "[m]ild spurring. No fracture or subluxation." *Id*. Dr. Sturtz "viewed the report and confirmed the results on September 1, 2005." (Dkt. No. 25, Sturtz Affidavit at ¶ 19).

The medical records show that Dr. Sturtz reviewed plaintiff's records again on December 8, 2005 and January 4, 2006. (Dkt. No. 25, Sturtz Affidavit at Ex. O). Dr. Sturtz states that his next contact with plaintiff's file was on February 9, 2006, when he reviewed and signed the physical therapist's recommendation. (Dkt. No. 25, Sturtz Affidavit at ¶ 35, Ex. S).

Dr. Sturtz states that after plaintiff's discharge from the infirmary on July 13, 2005, he treated plaintiff only twice. (Dkt. No. 25, Sturtz Affidavit at ¶ 48). According to Dr. Sturtz, "[o]ne time was January 10, 2007, during which time I provided [p]laintiff with an elbow brace. The other time, March 21, 2007, I was scheduled to check [p]laintiff's cholesterol level." *Id*. at ¶¶ 49-50. Dr. Sturtz states that during those two visits in 2007, plaintiff "did not complain . . . of back or neck pain." *Id*. at ¶ 51. Dr. Sturtz states that plaintiff's medical records were sent to Washington Correctional Facility on June 4, 2007 due to plaintiff's transfer to that

5

facility. *Id*. at ¶ 45.

Dr. Sturtz notes that prior to plaintiff's July 2005 accident, plaintiff had an x-ray of his lumbar spine on November 29, 2004. (Dkt. No. 25, Sturtz Affidavit at ¶ 20). The radiologist's report stated "***[d]egenerative changes*** are identified throughout the lower lumbar spine. There is disc space narrowing at L5-S1. No evidence of acute fracture or dislocation is identified." (Dkt. No. 25, Sturtz Affidavit, Ex. I)(emphasis added). Dr. Sturtz states that "[t]hese changes are due to aging rather than injury." (Dkt. No. 25, Sturtz Affidavit at ¶ 20). Dr. Sturtz also notes that plaintiff filed his first grievance related to his medical care on June 19, 2007, *after* plaintiff's transfer to Washington Correctional Facility. *Id*. at ¶ 46.

In his Affidavit and the attached exhibits, defendant Dr. Sturtz details plaintiff's treatment history with other staff members at Gouverneur Correctional Facility. Although not specifically relevant to Dr. Sturtz's care, the court will summarize this to show the extent of medical care rendered to plaintiff.

Plaintiff first complained of lower back pain, neck pain, and headaches on July 15, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 11 and Ex. E). The nurse ordered Ibuprofen, and advised plaintiff to apply moist heat to the sore muscle areas. *Id*. Plaintiff's sutures on his head from the July 12 accident were removed on July 19 and July 26, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶¶ 12 and 14; Ex. F and G). Plaintiff did not attend his sick call request on July 25, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 13 and Ex. F).

Plaintiff complained about pain in his back or neck on August 3, 5, and 15, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶¶ 16-18 and Ex. H). On each occasion, plaintiff was given Ibuprofen. *Id*. On the first two occasions, plaintiff was advised to apply moist heat to the sore muscle areas. *Id*. On the third occasion, plaintiff was advised that a medical consultation had already been ordered. *Id*. As noted above, an x-ray of plaintiff's lumbar spine was taken on August 26, 2005, and reviewed by Dr. Sturtz on September 1, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 19 and Ex. I). The x-ray showed "some mild spurring" but no fracture or subluxation. *Id*.

Plaintiff's complaints of pain continued in August and September 2005. Plaintiff complained of pain in his right shoulder on August 26, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 21 and Ex. K). Dr. Sturtz states that on September 16[2], 2005, plaintiff complained of back pain and continuous dizziness, and an appointment with Dr. Kasulke was scheduled. *Id*. at ¶¶ 22-23 and Ex. L. The medical records show that plaintiff complained of back pain on September 21, 2005. (Dkt. No. 25, Sturtz Affidavit, Ex. M at Sept. 21, 2005). Most of the September 21 entry is illegible. *Id*.

Plaintiff's next complaint about back pain was on November 3, 2005, and plaintiff was given Motrin. (Dkt. No. 25, Sturtz Affidavit at ¶ 24; Ex. M at Nov. 3, 2005). Dr. Sturtz notes that plaintiff "was seen and treated by medical personnel eight times between September 21, 2005 and November 3, 2005." *Id*. at ¶ 25 and Ex.

---

[2]Dr. Sturtz mis-states the date of plaintiff's complaint as September 23, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 22). The medical records appear to show that the complaint was made on September 16, 2005. (Dkt. No. 25, Sturtz Affidavit at Ex. L).

M. Plaintiff's next doctor's appointment occurred on November 29, 2005 as a "3 month follow up" appointment to address plaintiff's Type II diabetes and his recurring back pain. *Id*. at ¶ 26 and Ex. N. Plaintiff was prescribed ECASA[3] "to reduce pain and inflamation" and Flexeril "to treat skeletal muscle pain." *Id*.

Dr. Sturtz states that plaintiff "received a full physical examination, lab tests and a chest X-ray on December 8, 2005." (Dkt. No. 25, Sturtz Affidavit at ¶ 28). The AHR shows that Dr. Sturtz also reviewed the chest x-ray results on January 4, 2006. *Id*. at 2.

Plaintiff had a physical therapy evaluation on December 27, 2005 for his lower back pain, and agreed to participate in physical therapy on December 29, 2005. (Dkt. No. 25, Sturtz Affidavit at ¶ 29, Ex. P). At the initial consultation on January 12, 2006, the physical therapist found "mild" functional limitations, and stated that plaintiff's back problems were due to "dysfunction". (Dkt. No. 25, Sturtz Affidavit at Ex. Q & R). The physical therapist advised that plaintiff perform exercises to address his back problems. *Id*. at Ex. R. At a follow-up appointment on January 26, 2006, plaintiff stated that he was doing the exercises, but still having some pain. *Id*. at Ex. S. The physical therapist recommended that plaintiff perform the exercises for a longer period of time. *Id*. Defendant Dr. Sturtz reviewed the summary from the physical therapist, and signed and dated the form. *Id*.

Plaintiff's treatment by medical personnel at Gouverneur Correctional Facility

---

[3]ECASA is an aspirin-related medication, used a pain reliever and anti-inflammatory. http://www.prescription-drugs-information.com .

8

continued in 2006 and 2007.  Plaintiff's pain medication prescriptions were renewed periodically.  (Dkt. No. 25, Sturtz Affidavit at Ex. U, Y & V).  Plaintiff made specific complaints of his back pain, once each in July, August, September and December 2006.  *Id*. at Ex. V, W, X & Y.  Between October 2006 and April 2007, plaintiff was seen on eighteen occasions, and complained about his back pain only once in December.  *Id*. at Ex. Y & Z.  Plaintiff was transferred to Washington Correctional Facility in June 2007.  (Dkt. No. 25, Sturtz Affidavit at¶ 45, Ex. AA).

**3.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendant's burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380

F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b).  At the time that plaintiff's incident arose, an inmate had fourteen (14) days within which to file a complaint.[4]  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may

---

[4] The court would first point out that the regulations were re-numbered in 2006.  The court will cite to the new regulation numbers.  The original regulation number for the time to file grievances was section 701.7(a)(1), and provided a fourteen day time limit. *See Tackman v. Goord*, 2005 U.S. Dist. LEXIS 42654, *51 (W.D.N.Y. Sept. 26, 2005)(citing regulations).  The regulations have been amended to allow inmates twenty-one (21) calender days from an alleged occurrence within which to file a grievance, and the deadline appears in section 701.5. N.Y. CIV. PRAC. L. & R., tit.7, § 701.5(a)(1). *See also Winston v. Dodge*, 07 Civ. 1805, 2008 U.S. Dist. LEXIS 60966, *8-9 n.2 (S.D.N.Y. Aug. 5, 2008)(citing new regulations with the 21 day limit).

be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8 (emphasis added). Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a). The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(b). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* §§ 701.8(c); 701.8(d)(1)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h).

In this case, defendant argues that plaintiff has failed to administratively

exhaust his claim. (Dkt. No. 25, *Memorandum of Law* ("*Memo.*") at 6-9). Plaintiff acknowledges that he did ***not*** file any grievances on the subject of his medical care while incarcerated at Gouverneur Correctional Facility. (Dkt. No. 25, Kinsey Affirmation, Ex. A, Deposition ("Depo.") at 15-17). Plaintiff waited almost two years after his July 2005 accident to file a grievance about his medical care. (Dkt. No. 25, Kinsey Affirmation, Ex. B). Furthermore, when plaintiff did eventually, on June 19, 2007, file a grievance about his medical care while incarcerated at Washington Correctional Facility, he did not mention Dr. Sturtz. *Id*. Plaintiff did not respond to defendant's motion for summary judgment, and has not made any argument as to why he should be excused for any alleged failure to exhaust his claims.

Although there are circumstances in which the exhaustion requirement may be waived, this case is not one of those circumstances. The Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir, 2004)). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Plaintiff in this case does not meet the Second Circuit standard for waiver.

Plaintiff has not addressed defendant's argument.  The grievance procedure was available to plaintiff at all times.  Defendant has not done anything that would estop him from raising this defense.  Furthermore, there are no special circumstances that justify plaintiff's failure to properly exhaust his claim.  Thus, this complaint must be dismissed for failure to exhaust administrative remedies.

**4.     Medical Care**

Even plaintiff had exhausted his administrative remedies, the court finds that his medical care claim is without merit.  In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The

seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendants were "deliberately indifferent" to that serious medical condition. *Id*. In order to rise to the level of deliberate indifference, the defendants must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendants must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of

14

his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1086).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

In this case, as noted above, plaintiff's Complaint is very unclear as to what medical care, or what lack of medical care by Dr. Sturtz was constitutionally inadequate.  Although plaintiff alleges "neglect" and otherwise inadequate medical care, the medical records show that plaintiff was treated by many medical personnel at Gouverneur Correctional Facility.  When Ibuprofen and other, stronger, pain medications did not work, plaintiff was referred to a physical therapist for treatment. The medical care of plaintiff's back pain and other ailments continued during plaintiff's incarceration at Gouverneur in 2005, 2006, and 2007.  Plaintiff did not file a grievance, or complain in any way about his medical care until he had been

transferred to another facility two years after the July 2005 accident.  Under *Daniels*, neglect is not an actionable claim under Section 1983.  Furthermore, while plaintiff may disagree with the medical care that he received, or allege that not enough was done quickly enough, there is no evidence to show that Dr. Sturtz was deliberately indifferent to plaintiff's medical needs.  The complaint could also be dismissed on this basis.

**WHEREFORE** it is hereby

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 25) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: August 31, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge